STATE OF ALASKA
DEPARTMENT OF EDUCATION AND EARLY DEVELOPMENT
SPECIAL EDUCATION DUE PROCESS HEARING
BEFORE JONATHON A. KATCHER, HEARING OFFICER

IN THE SPECIAL EDUCATION          )
MATTER CONCERNING N.S,            )
                                  )
VS.                               )
                                  )
ANCHORAGE SCHOOL DISTRICT.        )
                                  )
_____ )      DEED CASE NO. HR 06-18

## DECISION AND ORDER

### INTRODUCTION

This is a special education due process hearing pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. 1400 *et seq.*, corresponding Alaska Statutes, AS 14.30.180 *et seq.*, and federal and state regulations. 34 C.F.R. 300.1 *et seq.*; 4 AAC 52.010 *et seq.*

The core issue is whether the school district is obligated to provide "door to door" transportation for the student. In this case "door to door" means delivering the student after school to the entrance of his home, a process which involves district transportation personnel pushing the student's wheel chair up a driveway and a ramp.[1] There is also the equally important issue of whether the district engaged in substantial and consequential procedural violations that infringed upon the guardians' ability to meaningfully participate in the Individualized Education Program

---

[1]
Before school door to door service is not at issue because the guardians are available at home in the morning to push the student down the ramp and driveway.

**DECISION AND ORDER**
***N.S. v. Anchorage School District***, **DEED Case No. 06-18**      **PAGE 1**

(IEP) formulation process.[2]  For the reasons discussed below, the hearing officer answers both issues in the affirmative.  The students' right to a Free and Appropriate Public Education (FAPE)[3] includes the district providing him with door to door transportation.  The hearing officer also finds that the district engaged in conduct that interfered with the guardians' procedural right to meaningfully participate in the formation of the IEP.

### PROCEDURAL HISTORY

Federal and state regulations require special education due process hearings to be fully decided within 45 days of a hearing request.  34 C.F.R. 300.511(a)(1); 4 AAC 52.550(f).  Because this case has now lasted 162 days, an explanation is in order.

The guardians made their due process hearing request on March 6, 2006.  Student Exhibit 15; District Exhibit 31.  The State of Alaska Department of Education & Early Development (DEED) assigned this matter to this hearing officer on March 13, 2006.  DEED

---

[2]

An IEP is created for every special education student at a meeting of the parents, teachers, and representatives of the district.  *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 181 (1982).  The purpose of the IEP is to tailor the student's education to his individual needs.  *Id.*  *See also*, 20 U.S.C. 1401(11); 34 C.F.R. 300.340 - .350; 4 AAC 52.790(a)(10) and (11).

[3]

Under IDEA, special education students are entitled to a free appropriate public education (FAPE), which is defined as special education and related services, provided at public expense, meeting state standards, including an appropriate education in conformity with an IEP.  20 U.S.C. 1401(8); 34 CFR 300.13; 4 AAC 52.790(a)(7) and (8).  *See also*, AS 14.30.350(1) defining "appropriate education."

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18       **PAGE 2**

determined that the 45 day time limit for the issuance of a decision would expire on April 20, 2006.

Telephonic pre-hearing conferences were held on March 30 and April 11, 2006. Over the guardians' objection the hearing was set for May 2, 2006. The hearing officer found there was good cause to extend the 45 day deadline from April 20th to May 2nd. *See* Order dated April 11, 2006.

Testimony and argument were heard on May 2, 3, 5, 6, 15, 16 and 19. On May 5, 2006 the hearing officer entered a "stay put" order requiring the district to provide door to door transportation pending final resolution of this case.[4]

Upon the closing of the record the parties agreed to undertake post hearing briefing. The transcript was ready on June 6, 2006. The parties agreed to a briefing schedule that was to be completed by July 7, 2006, and the hearing officer committed to issue a decision by July 21st. The parties agreed to several extensions, and briefing was completed on July 28th. The hearing officer then committed to issue a decision by August 11th. The press of other business made it necessary for the hearing officer to extend his decision until August 16, 2006.

Under the foregoing circumstances there was good cause to extend the 45 day deadline to complete the hearing on May 19, 2006, and for a reasonable period thereafter for purposes of briefing,

---

[4]
*See* discussion of "stay put" in the conclusions of law at pp. 17-19 *infra*.

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18     **PAGE 3**

and for the hearing officer to issue this written decision.

## FINDINGS OF FACT

**Witnesses:** The following witnesses testified at the hearing: Mr. P., the student's male guardian; Ronald W. Keller, M.D., the student's physician; Jill Friedman, the student's case manager; Jacqueline Bressers, the student's guardian *ad litem* (GAL); David Barton, an American with Disabilities Act (ADA) coordinator for Access Alaska; Jerry Sjolander, Director of Special Education for the district; Wayne Campbell, transportation specialist for the district; and Heather Edgren, the student's teacher.

**Exhibits:** The following exhibits were admitted into the record without objection: Student Exhibits 1 through 23; District Exhibits 1 through 53. The guardians objected to District Exhibit 54, a district pamphlet regarding special education transportation, and District Exhibits 55 and 56, which are DEED notices of procedural safeguards for the years 2003 and 2005. The guardians argued that the district failed to timely disclose these exhibits, in violation of 34 C.F.R 509(b), and 4 AAC 52.550(c)(5) and (6). The hearing officer overruled the guardians' objections and admitted District Exhibits 54, 55 and 56. Trans. 416, 560-67.

The following relevant facts are not in dispute. Therefore, citations to the record are not necessary, but are included where appropriate:

1.     The student is an eighteen year old boy (born 05/9/88) with multiple disabilities, which for purposes of IDEA is defined

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18          **PAGE 4**

at 34 C.F.R. 300.7(c)(7), and 4 AAC 52.130(b)(1). The student survived a childhood onset of meningitis, resulting in various severe physical and mental disabilities. The student is dependent upon a wheel chair for mobility.

2.    N.P (Mr. P.) and A.P (Ms. P.) are special education teachers who met the student through his schooling. In 2001 the Superior Court appointed the P.s as guardians for the student. Student Exhibit 2.[5]

3.    Prior to the guardianship, when the student lived with relatives, the district provided transportation to the student. Student Exhibit 10, p. 24; Trans. 59, 61.

4.    In 2001 the student moved to the guardians' home in the Chugiak High School attendance area.

5.    During the 2000-2001 school year the student attended 7th grade at Clark Middle School, about 22 miles from the guardians' home. During that time Ms. P. worked at Clark (Trans. 59) and Mr. P. worked at East High School, about 25 miles from the guardians' home. Starting in March 2001, and through the student's 2002-2003 8th grade school year, Mr. P. used a specially modified van to drive the student and Ms. P. to Clark on his way to work at East. The van, and all transportation costs, were paid for out of a special

_____

[5]
In a related matter (DEED Case No. 06-22) this hearing officer rejected the district's argument that the guardianship order has expired and therefore the guardians do not have authority to pursue IDEA due process on behalf of the student after his 18th birthday. The guardianship order has not expired and the guardians continue to have the authority, indeed the duty, to represent and protect the student.

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18        PAGE 5

needs trust that was created to compensate the student for a personal injury claim arising from his meningitis. The trust and the guardians did not apply for, and the district did not reimburse, the cost of transporting the student to and from Clark. Mr. P. informed the district that he was transporting the student to and from Clark. The student's IEP was never amended or modified to reflect that Mr. P. was transporting the student at the expense of the trust.

6.    Starting with the 2003-2004 school year and through 2004-2005 the student attended 9th and 10th grades at East High School. Mr. P. transported the student to East at the expense of the trust. The student's IEP was never amended or modified to reflect that Mr. P. was transporting the student at the expense of the trust. The district knew Mr. P. was transporting the student. The trust did not apply for reimbursement.

7.    At the beginning of the 2005-2006 school year the student transferred from East High to Chugiak High, his local high school, to attend 11th grade. No IEP meeting was convened at the beginning of the school year to address the manner in which the student's transfer from East to Chugiak would impact any element of his program, including transportation. The guardians informed the district that the student would need transportation to and from Chugiak, and the district provided transportation on a special education bus.

8.    The guardians' home is a single family residence situated up a driveway about 50 feet back from the street. Trans. 509. The

**DECISION AND ORDER**
***N.S. v. Anchorage School District***, DEED Case No. 06-18    **PAGE 6**

home has a 12 foot ramp from the driveway up to a porch with an entrance into the building. Student Exhibit 13D. The ramp is not compliant with the ADA in various respects including grade, surface materials, railings, and gate. Nevertheless, Mr. Barton of Access Alaska testified that the ramp is safe, and that ADA does not apply to the guardians' home. *Id.*

9.   Ms. P. is now a special education teacher at Chugiak Elementary School, near the student's home. In September and October 2005 Ms. P. stayed home on maternity leave.

10.   During September and October 2005, transportation of the student was handled as follows: in the mornings Mr. P. would push the student down the ramp and down the driveway to the curb where a special education bus would pickup the student. After school the special education bus would drop the student off at the curb. Ms. P., home on maternity leave, would push the student up the driveway and ramp and into the house. This was "curb to curb" service.

11.   Ms. P.'s maternity leave was to expire in early November 2005. The guardians requested a meeting with the district to address transportation of the student because Ms. P. would no longer be at home after school to receive the student and push him up the driveway and ramp. Ms. P.'s 81 year old mother is at home after school, but she is not physically able to push the student up the driveway and ramp. The guardians requested the district to have a district employee push the student up the driveway and ramp. The guardians were in essence requesting "door to door" service for the afternoons. Morning door to door service is not necessary,

**DECISION AND ORDER**
***N.S. v. Anchorage School District*, DEED Case No. 06-18      PAGE 7**

requested, or at issue in this hearing because one of the guardians is always present in the morning to deliver the student to the curb.

12. On November 2, 2005 a meeting convened at Chugiak High School to address the guardians' request for door to door service. Present at the meeting were Mr. P., Ms. P., case manager Friedman, teacher Edgren, and transportation specialist Campbell. Prior to the meeting Edgren had prepared an IEP amendment which provided in pertinent part: "Due to a change in circumstances at home, [the student] will require assistance getting from his residence to the special education bus in the morning, and back from the bus to the door in the afternoon." Student Exhibit 6 p. 1; District Exhibit 5 p. 1 (the "door to door amendment"). Edgren testified that she prepared this door to door amendment because this is "what the parents had requested and it was my understanding that that's what Mr. Campbell was going to be able to approve when he came to the meeting." Trans. 519. Edgren gave the door to door amendment to the meeting participants. During the meeting Campbell advised that the district's policy was to provide curb to curb service, that he did not have authority to approve door to door service, and that he would have to confer with his supervisors to obtain approval of door to door service. During the meeting Mr. P. attempted to telephone Special Education Director Sjolander and Cindy Anderson, Director of Secondary Special Education; Sjolander and Anderson were unavailable. During the meeting nobody objected to the proposition that the student needed door to door service. Trans.

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18          **PAGE 8**

520.

13.   During the November 2nd meeting Edgren prepared an IEP
amendment which provides in pertinent part: "[The student] is
receiving Special Education Transportation services.  He requires
a bus with a wheelchair lift."   Student Exhibit 6 p. 2; District
Exhibit 5 p. 2 (the "curb to curb amendment").   Edgren prepared
this amendment because the existing IEP (Student Exhibit 5;
District Exhibit 3) did not specifically address transportation,
and the status quo curb to curb service needed to be put in writing
pending the approval of the door to door service request.   Trans.
521-22.   The guardians and Friedman signed the curb to curb IEP
amendment, but the form specifically states that their signature
"does not constitute agreement or disagreement with the IEP."
Student Exhibit 6 p. 2; District Exhibit 5 p. 2.   The guardians and
Friedman left the November 2nd meeting with the understanding and
expectation that door to door service would be approved upon
consideration by those district personnel who had proper authority.

14.   During November 2005 the district continued to provide
only curb to curb service.   Ms. P., who had returned to work at
Chugiak Elementary, would take her lunch break to coincide with the
student's arrival at home so that she could meet the bus and push
him up the driveway and ramp.   Ms. P. would then return to work.
On two occasions the student was left outside in inclement weather
because Ms. P. could not get home to meet the bus, the district
personnel did not push the student up the driveway and ramp, and
Ms. P.'s mother was not able to push him.   Ms. P's mother had to

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18        PAGE 9

cover the student with blankets to keep him warm until one of the guardians arrived.

15.   On November 16, 2005 GAL Bressers sent the first of what became a series of correspondence between various persons regarding whether door to door had been agreed to, and what type of service the district would provide.  District Exhibits 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 22, 23, 25 and 45; Student Exhibits 7, 8 and 9.

16.   On December 12, 2005 Sjolander wrote the guardians to advise, among other things, that consistent with a December 7th phone call with the guardians, "the district was willing to provide [the student] with assistance up the ramp at your home beginning on December 9th and continuing until the last day of January, 2006." Student Exhibit 9 p. 8; District Exhibit 14 p. 2.  The letter states the guardians "agreed to work with Chugiak High School to locate a volunteer student" to assist with pushing the student up the ramp."  Sjolander closes with:

> 11.   As the decision to assist [the student] with door-to-door transportation services is an administrative one of limited duration, no amendment or PWN [prior written notice] will be issued.[6]

17.   On January 6, 2006, Mr. P. emailed Sjolander to advise that the guardians were not comfortable with the district having a volunteer student, rather than a district employee, push the

---

[6]
A district is required to provide Prior Written Notice (PWN) of its intention to refuse to change the educational placement of a student.  20 U.S.C. 1415 (b)(3) and (c); 34 C.F.R. 300.503; 4 AAC 52.190.

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18      PAGE 10

student up the driveway and ramp.  Student Exhibit 9 p. 9.

18.  On January 19, 2006, Sonja Kerr, the guardians' attorney, wrote the district's attorney and provided a courtesy copy of a draft federal court complaint and injunction seeking relief under IDEA as well as ADA.  District Exhibit 15; Student Exhibit 9 p. 13. Kerr advised that she would file the suit unless the district confirmed that it would continue to provide door to door service after January 31, 2006, the date Sjolander had declared in his December 12th letter that such service would terminate.

19.  On January 20, 2006, Sjolander responded to Kerr's January 19th letter.  District Exhibit 17; Student Exhibit 9 p. 15. After taking issue with Kerr's assertions, Sjolander states:

> 5.  I am making an administrative decision to continue the current level of assistance through the remainder of the school year.  Specifically personnel will provide afternoon assistance from the bus to the door of the parent's home on those days such assistance is needed.

20.  On January 25, 2006 Kerr wrote the district's counsel inquiring as to how the district could continue with door to door service without an IEP meeting or a PWN.  Student Exhibit 9 p. 17; District Exhibit 18.  Kerr advised that it was the guardians' position that door to door service was now part of the student's program and that stay put would apply to any attempt to modify door to door over the guardians' objections.

21.  On January 30, 2006 the district's counsel wrote Kerr to advise that no IEP meeting was planned because the November 2nd IEP meeting "concluded that no change to the current IEP services was

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18      **PAGE 11**

warranted.   Mr. Sjolander's administrative determination is not intended to be, and is not, an amendment to the IEP."   Student Exhibit 9, p. 19; District Exhibit 19.

22.  On Wednesday March 1, 2006 the district's counsel FAX'd Kerr a letter dated February 28, 2006.   Student Exhibit 9 p. 27; District Exhibit 25.   The letter advised that one of the bus drivers had injured his back while pushing a student up the ramp. The letter declared that "as of Monday March 6, neither ASD nor the bus driver will be responsible for pushing [the student] up the ramp ..."

23.  On Thursday March 2, 2006 the guardians filed in Anchorage Superior Court a Complaint and Request for Emergency Injunctive Relief, along with a Motion for Expedited Consideration of Motion for Preliminary Injunction. *[Student] v. Anchorage School District,* Case No. 3AN-06-5662 Civil.  Student Exhibit 12; District Exhibits 26 and 27.    The complaint asserts claims for breach of contract and violation of the ADA; no claims are asserted under IDEA.  *See* Complaint at pp. 7-8.

24.  On Friday March 3, 2006 the district's counsel wrote Kerr to advise in essence that the district would continue door to door service without prejudice pending resolution of the preliminary injunction motion.  Student Exhibit 9 p. 29; District Exhibit 28.

25.  On March 6, 2006 the guardians gave the district and DEED notice of their demand for IDEA due process in this case.  Student Exhibit 15; District Exhibit 31.

26.  On March 31, 2006, the district filed in the Superior

**DECISION AND ORDER**
*N.S. v. Anchorage School District,* **DEED Case No. 06-18    PAGE 12**

Court case a Motion to Strike/Motion to Preclude Evidence.
District Exhibit 42.   The district objected to certain arguments,
claims and legal theories raised by the guardians allegedly for the
first time in their March 28, 2006 reply regarding the motion for
preliminary injunction.    In its motion to strike the district
asserts:

> [The student] also attempts to add whole new causes
> of action under the IDEA, and now contends that "... ASD
> is responsible to ensure the safety of any ramp for this
> child under other laws.  See CFR 300.24(15) (defining
> special education related services transportation as
> including 'lifts, ramps.'  As another IDEA claim, [the
> student] asserts 'ASD is required to comply with both the
> ADA and with the special education requirements and
> cannot mislead the Court about special education
> requirements to defend itself from an allegation of
> discrimination under the ADA.'    Reply, p. 11. [The
> student] further argues that ASD is required under the
> IDEA to push him up the ramp.   Reply, p. 13. [The
> student] additionally claims that 'it is within the ASD's
> power, purview and responsibility to modify the ramp or
> the method of assisting [the student] up the ramp[,']
> and further argues that under the IDEA responsibility to 'get
> [the student] to and from school' rests with the
> District. [The student] has never previously pled or
> raised an IDEA claim.

Motion to Strike at pp. 4-5 (footnote omitted).

The district goes on to argue:

> [N]either the Complaint nor the Memorandum alleges
> any claims under the IDEA as [the student] is well aware,
> no IDEA claims could be raised in the complaint because
> he has not exhausted his administrative remedies. .....
> This court lacks jurisdiction over any IDEA claims until
> [the student] administratively litigates all of the IDEA
> isses he attempts to raise here ...

*Id.* at pp. 7-8 (footnote and citations omitted).

27.  On April 7, 2006 Superior Court Judge Patrick McKay held
a hearing on the motion for preliminary injunction.  On April 11th

Judge McKay issued an order denying the preliminary injunction. Student Exhibit 17; District Exhibit 49. Judge McKay made findings of fact including the following:

> 5. The parties agree that no cliams under the Individuals with Disabilities Education Act ("IDEA") have been presented to the court at this time, as the plaintiffs are still proceeding through remedies provided by the administrative process.

*Id.,* at p. 2.

Judge McKay rejected the guardians' claims for breach of contract and violation of the ADA. Judge McKay granted in part the district's motion to strike, stating:

> Plaintiffs conceded that any IDEA claim was premature and, in any case, this court would not have jurisdiction because plaintiffs are still in the process of exhausting administrative remedies available to them.

*Id.* at p. 4.

28. As part of the Superior Court ADA/contract litigation the district offered two alternative accommodations: either the student could stay after school at Chugiak High under district supervision until one of the guardians could pick him up and take him home; or the district would transport the student to Ms. P.'s kindergarten special education classroom at Chugiak Elementary where he would be attended by an aide until Ms. P's work ended and she could transport him home. *Id.* at p. 3, Finding of Fact 8. Judge McKay found these accommodations to be reasonable under the ADA. *Id.,* Conclusion of Law 3.

29. On April 7, 2006, apparently in response to findings Judge McKay had made on the record at the preliminary injunction

**DECISION AND ORDER**
***N.S. v. Anchorage School District,*** **DEED Case No. 06-18      PAGE 14**

hearing consistent with the order he issued on April 11th, the
district's counsel wrote Kerr to advise that effective April 10th
the district would terminate door to door service. Student Exhibit
9 p. 35; District Exhibit 45. The district requested instructions
as to which alternative accommodation the guardians preferred.
Kerr responded that notwithstanding Judge McKay's denial of the
preliminary injunction on contract and ADA, IDEA stay put
nevertheless applied and the district was obligated to continue to
provide door to door service. Student Exhibit 9 p. 35. In
response to the district's demand for the guardians to express a
preference as to how the district should provide curb to curb
service, Kerr advised that the guardians preferred the student to
be transported to Ms. P.'s room at Chugiak Elementary. Student
Exhibit 9 p. 36. However, Kerr advised that the guardians expected
the district to transport the student from Chugiak Elementary home.
*Id.* The district's counsel responded on April 7th, rejecting the
guardians' claim of stay put. Student Exhibit 9 p. 39. In
response to the guardians' assertion that they would not transport
the student home from Chugiak Elementary, the district's counsel
advised that if Ms. P. left him at Chugiak Elementary then the
district "will have no alternative other than to call the police or
OCS to have someone take custody of him for his own protection."
*Id.* The guardians ultimately elected to transport the student home
from Chugiak Elementary themselves.

30. On April 14, 2006 the guardians served the hearing
officer with a motion for stay put dated April 13th. The guardians

**DECISION AND ORDER**
*N.S. v. Anchorage School District,* DEED Case No. 06-18    PAGE 15

requested the hearing officer to order the district to provide door to door service pending the final resolution of this due process hearing. The district filed an opposition to stay put on April 20th, and the guardians filed a reply on April 21st. On April 25th the hearing officer issued a written order denying the stay put motion without prejudice and instructing the parties to come to the hearing prepared to address the issue.

31. At the hearing on May 3 and 4, 2006 the parties presented argument on stay put. On May 5th the hearing officer issued a written order granting stay put and ordering the district to immediately provide door to door transportation to the student.

<u>CONCLUSIONS OF LAW</u>

**Burden of proof.** Prior to May 20, 2006 the district had the burden of proof by a preponderance of the evidence. Former 4 AAC 52.550(e)(9). However, on March 1, 2006, in accordance with discretion approved of by the Supreme Court in <u>Schaffer v. Weast</u>, 126 S.Ct. 528 (2005), Alaska DEED revised 550(e)(9) effective May 20th to place the burden of proof on the party requesting the hearing, which in this case would be the guardians. All of the evidence in the instant case was presented before May 20th. During the evidentiary part of the hearing neither party raised the burden of proof issue, and neither party advised the hearing officer of the pending Alaska regulatory change. This is unlike *Special Education Matter Concerning Student __*, DEED Case No. 06-14, Final Decision and Order (July 6, 2006), where the parties raised the

**DECISION AND ORDER**
***N.S. v. Anchorage School District*, DEED Case No. 06-18     PAGE 16**

burden issue with Hearing Officer Lebo at the beginning of that hearing, and he cautioned the parents "because the issue was 'in transition' [the parents] 'should assume the worst and assume that you have to ... meet some level of burden of production.'" *Id.* at 9.[4]    Moreover, in the instant matter the district's counsel appeared to be proceeding as if he had the burden of proof. *See, e.g.*, Trans. 220, lines 20-21 ("And since the School District has the burden ..."). The burden of proof is on the district. Assuming *arguendo* that the guardians have the burden of proof, the hearing officer specifically finds that the guardians have been more persuasive than the district on those factual issues which are in dispute.

**Stay put.** For the reasons expressed by the hearing officer on the record (Trans. 432-43, 456-80) the hearing officer remains convinced that Sjolander's "administrative decision" to provide door to door service instituted an educational placement that must remain in effect under stay put. Stay put is a fundamental IDEA doctrine whereby the student is to remain in his then current educational placement pending due process. 20 U.S.C. 1415(j); 34 C.F.R 300.514(a); 4 AAC 52.580(a). The Supreme Court has declared the stay put statutory language to be "unequivocal." *Honig v. Doe,*

---

[4]
   *But see* AS 44.62.240, providing that legislative regulations have "prospective effect only." The DEED burden of proof regulation is a legislative regulation. *Wien Air Alaska, Inc. v. Dept. of Revenue*, 647 P.2d 1087, 1097-98 (Alaska 1982)(discussing difference between legislative regulation and adjudicative regulation).

**DECISION AND ORDER**
***N.S. v. Anchorage School District*, DEED Case No. 06-18    PAGE 17**

484 U.S. 305, 322, 108 S.Ct. 592, 604 (1988).

The instant facts establish the following: The guardians requested an IEP meeting to consider there demand for door to door service. Edgren came to the IEP meeting with a door to door amendment already drafted. The IEP team agreed door to door was appropriate for the student. The district advised through transportation representative Campbell that door to door required approval by somebody higher up in the district. Regardless of whether it was appropriate for the district to convene an IEP meeting without the presence of an authoritative representative, this is how it elected to proceed. On December 12th Sjolander, as the authoritative district representative, approved door to door. Sjolander's decision was the very approval the IEP team was waiting for. This became the student's educational placement for purposes of stay put. Having granted such approval Sjolander could not unilaterally withdraw it without violating the stay put doctrine.

The hearing officer finds unconvincing, indeed unfathomable, the district's attempts to characterize Sjolander's approval of door to door as an "administrative decision" that is outside the scope of, and not subject to, IDEA. Nothing in IDEA countenances such an approach. The Supreme Court in *Honig* is instructive: "Congress very much meant to strip schools of the unilateral authority they had traditionally employed ..." 484 U.S. at 323, 108 S.Ct. at 604. It would be antithetical to stay put to allow Sjolander to exercise unilateral and unreviewable authority under the fig leaf of an "administrative decision." When questioned

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18    PAGE 18

about how the guardians would seek review of his subsequent "administrative decision" to deny door to door, Sjolander suggested appeal to the assistant superintendent, then the superintendent, then a complaint process, and finally the Municipal Ombudsman. Trans. 396-97.   Neither Congress when it passed IDEA, nor the federal and state departments of education when they promulgated the very detailed due process and stay put regulations, had such an administrative decision appeal process in mind.   On the contrary, the IDEA statutes and regulations specifically instituted due process and stay put in order to preclude and prevent such unilateral and unappealable decision making by school district administrators.

Door to door became the student's educational placement as of Sjolander's December 12th letter.   The district violated stay put when it unilaterally terminated door to door on April 11th.

**The hearing officer is not bound by Judge McKay's findings and conclusions.**   The district argues that for purposes of IDEA the hearing officer is bound by Judge McKay's findings that the district was not obligated to provide door to door service under contract or ADA.   The district's arguments are inconsistent with the superior court record, particularly the district's own arguments to Judge McKay.  The guardians' superior court complaint asserts no claims under IDEA.   The district's motion to strike objected to the guardians' alleged attempts to inject IDEA into the superior court, arguing that they must first exhaust their IDEA

DECISION AND ORDER
*N.S. v. Anchorage School District*, DEED Case No. 06-18      PAGE 19

administrative remedies.    Judge McKay specifically found that no
IDEA claim had been presented to him, that any IDEA claim was
premature, and that he would not have IDEA jurisdiction.    That
Judge McKay made the factual findings that the parties did not
enter into a binding contract for door to door on November 2nd, and
that the district had complied with ADA, neither informs nor
determines whether the district was obligated under IDEA to provide
door to door.    Nor does it inform or determine the IDEA effect of
Sjolander's December 12th decision to provide door to door.    Judge
McKay's findings and conclusions do not bind the hearing officer in
this IDEA proceeding.

   **The student's right to FAPE includes door to door service.**
The parties do not dispute that FAPE includes the related service
of transportation.    20 U.S.C. 1401(22); 34 C.F.R. 300.24(b)(15).
The issue is whether the related service of transportation for this
student includes door to door.    It cannot be seriously asserted
that the student should be left at the curb to fend for himself.
The question then becomes: Who must get him from the curb to the
house - the district or the guardians?

   At the outset it is critical to appreciate that the district's
curb to curb policy is immaterial.    Such a policy can not be used
to trump the IDEA requirement, underscored by the Supreme Court in
*Rowley*, 458 U.S. at 181, that related services must be "tailored to
the unique needs" of the student.    *Crawford v. Pittman*, 708 F.2d
1028 (5th Cir. 1983)(state's 180 day school year policy cannot serve

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18       **PAGE 20**

to undermine student's right to an individualized program that includes year round service); *Battle v. Pennsylvania*, 629 F.2d 269, 280 (3rd Cir.)(same), *cert. denied*, 101 S. Ct. 3123 (1980). If the unique needs of the student require door to door service, then this is what the district must deliver, irregardless of its policy.

A demand for door to door service above and beyond what is provided to non-disabled or other disabled students must be analyzed on a case by case basis. *Malehorn v. Hill City School Dist.*, 987 F.Supp. 772, 780 (W.D.S.D. 1997). Using this case by case approach, the foregoing findings of fact establish that this student requires door to door service.

The parties cite several cases on whether a school district is obligated to provide door to door service. *See, e.g.*, *Fick v. Sioux Falls School Dist.*, 337 F.3d 968 (8th Cir. 2003)(district need only deliver student to home); *Dist. of Columbia v. Ramirez*, 377 F.Supp.2d 63 (D.D.C. 2005)(district must deliver student to door of apartment inside apartment building); *Independent School District*, 22 IDELR 598 (Minn.S.E.A. 1995)(district must provide door to door service up driveway); *Independent School District*, 17 IDELR 21 (Minn.S.E.A. 1990)(district must deliver student to threshold of home, but need not transport her into the home). While informative, these cases, and the parties arguments regarding same, miss the point of the instant controversy. The parties agree that this student should not be left in his driveway, especially in the Alaska winter, under circumstances where he is not guaranteed a push into his home. Somebody must give this student this push.

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18    **PAGE 21**

The hearing officer concludes that it is not the guardians' responsibility to complete this transportation transaction; it is the district's job. The district's ADA complaint accommodations of keeping the student at Chugiak High until one guardian can pick him up and take him home, or delivering him to Chugiak Elementary so that the other guardian can take him home, only underscore the inescapable conclusion that the district is not fulfilling its IDEA obligation to provide the related service of transportation to and from school.[5] The district must pick him up at home and deliver him back home. Leaving him in his driveway, or at Chugiak High, or at Chugiak Elementary, does not fulfill this duty.

The district argues that there is no evidence the student's education program is adversely effected by its ADA complaint approaches of either keeping the student at Chugiak High, or delivering him the Chugiak Elementary. But again, neither approach gets the student home. Both approaches leave it up to the guardians to deliver the student home. Both approaches fail to vindicate the district's obligation to provide the related service of transportation to and from home.

Finally, that the district has the obligation to provide door to door service can be readily deduced with a slight alteration of the facts. Let us assume that this 18 year old student, albeit

---

[5] The hearing officer is bound by Judge McKay's determination that these accommodations satisfy ADA. But as discussed *supra.*, this does not bind the hearing officer regarding whether these accommodations satisfy IDEA.

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18      **PAGE 22**

wheel chair bound, is physically and mentally capable of caring for himself upon his arrival at home. Assume that once in the house he can get himself out of his chair, toilet himself, feed himself, and otherwise care for himself without supervision at home alone. In this hypothetical, the unavailability of the guardians, and the disability of Ms. P.'s 81 year old mother, are immaterial. Can the district seriously contend that such a student should be left at the curb unable to get up his driveway and ramp? Can the district seriously contend that an IDEA compliant individualized program for this student would require that, unlike other 18 year olds, he must either stay after school until his one guardian can pick him up, or he must wait in his other guardian's kindergarten room until she can take him home?

The hearing officer concludes that the student's right to FAPE includes the district's complete fulfillment of its related service transportation responsibility by delivering the student to the door of his home.

**Reimbursement.** The guardians seek reimbursement for the expenses the special needs trust incurred to transport the student from his home in Chugiak to Clark Middle School and back, approximately 22 miles each way, and to East High and back, approximately 25 miles each way. This claim is denied for two reasons. First, the student was originally attending Clark because he lived with his family in the Clark attendance area. In March of 2001 he moved out to the guardians' home in Chugiak, which is in a

DECISION AND ORDER
*N.S. v. Anchorage School District*, DEED Case No. 06-18      PAGE 23

different middle school attendance area. He then continued to attend Clark and then East under a zone exemption. Nothing in the record supports the proposition that he needed to attend Clark or East, or that he could not have been adequately served by his local schools in the Chugiak area. Students, including disabled students, who attend another school under a zone exemption, are not entitled to transportation at district expense. Second, Mr. and Ms. P. transported the student to Clark and East as part of their own commute to work. The hearing officer is unclear how he would fairly allocate these expenses between the student's transportation and the P.s' commute.

However, the guardians and/or the trust are entitled to reimbursement for the expenses incurred between November 3rd and December 9, 2005 to drive home from Chugiak Elementary and back in order to meet the student upon arrival, and between April 10 through May 5, 2006 to drive the student home from Chugiak Elementary.

**Procedural violations.** The hearing officer specifically finds that the district engaged in at least four procedural violations that substantially and seriously interfered with and infringed upon the guardians' opportunity and ability to meaningfully participate in the IEP process. First, the district convened an IEP meeting on November 2nd without a district representative that had authority to address the only issue on the table: door to door service. Second, the district failed to provide IDEA compliant prior written

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18     **PAGE 24**

notice (PWN) of its refusal to provide door to door service. Third, Sjolander specifically characterized his December 12th decision as "administrative," thereby unilaterally and unlawfully circumventing the IDEA requirements of PWN and due process review. Fourth, in the face of the guardians' demand for a new IEP meeting and PWN, the district maintained its untenable position that Sjolander's "administrative decision" was outside the IDEA process. Even though the hearing officer has found that FAPE requires the student to have door to door service, thus potentially mooting the impact of these procedural violations, the hearing officer nevertheless finds that these violations were so egregious as to infringe upon the guardians' ability to meaningfully participate in the IEP process, thereby undermining the integrity of IDEA in this case as a whole. Under *M.L. v. Federal Way School Dist.*, 394 F.3d 634, 653 (9th Cir. 2005)(Gould, J., concurring), the hearing officer finds these procedural violations constitute a denial of FAPE.

This analysis must begin with *Rowley* where the Supreme Court underscored the importance of the procedural component of IDEA. *Rowley* provides a two prong framework for IDEA review:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?

*Rowley*, 458 U.S. at 206-07 (footnote omitted).

In *M.L.* the 9th Circuit struggled with the issue of what standard should be used to determine whether a procedural violation is so significant that it denies FAPE. A divided court issued an

**DECISION AND ORDER**
***N.S. v. Anchorage School District***, DEED Case No. 06-18    **PAGE 25**

opinion that requires considerable effort to discern the actual majority holding. The simplest summary is as follows: two judges (Gould and Clifton), and therefore the majority, adopted a harmless error standard. 394 F.3d at 651-655, and 658. In other words, a parent must prove that the alleged procedural violation either caused a loss of educational opportunity for the student, or significantly restricted parental participation in the IEP process. The minority (Judge Alarcon) adopted a structural defect standard. 395 F.3d at 644-48. In other words, a substantial procedural violation amounting to a structural defect can of itself prejudice the student's right to FAPE irregardless of whether the IEP is substantively satisfactory. According to Judge Alarcon, if a court finds a structural defect then it would result in "a futile advisory opinion which is beyond [the court's] judicial power" for the court to evaluate the substantive merits of the IEP. 395 F.3d at 648.

Adding confusion for the reader of *M.L.* is the fact that Judge Gould, who had formed the majority with Judge Clifton to adopt the harmless error standard, nevertheless joined Judge Alarcon to hold that the district's procedural violations had denied the student's right to FAPE. Judge Clifton, who was in the majority with Judge Gould regarding harmless error, took the minority position that FAPE had not been denied because he believed that the procedural defect at issue was actually harmless.

The best summaries of the holding in *M.L.* are presented by Judges Gould and Clifton:

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18     **PAGE 26**

> Procedural error ... constitute the denial of FAPE only when it results in lost educational opportunity for the child, or when it significantly restricts parental participation in the IEP formation.

394 F.3d at 653 (Gould, J.).

> As Judge Gould correctly observes, a procedural violation constitutes denial of a free appropriate public education only when it results in lost educational opportunity or significantly restricts parental participation in the formulation of the IEP.

394 F.3d at 658 (Clifton, J.).

Therefore, the question under the *M.L.* majority holding is whether the district's procedural errors significantly restricted the guardians' participation in the development of the IEP. Using this standard the hearing officer must conclude that the district's entire procedural approach to the door to door issue significantly restricted the guardians' participation in the formulation of the IEP.

It gives this hearing officer no pleasure to reach such a conclusion. This hearing officer has the utmost respect for the district, its administrators, and its counsel. But the holdings of *Rowley* and *M.L.* must be enforced, and in the experience of this hearing officer no case has so compellingly called for application of this doctrine.

It might be asked why the hearing officer undertook a substantive FAPE analysis of the door to door issue when he found that there were egregious procedural violations that denied FAPE? Why shouldn't the egregious violation finding render unnecessary the entire consideration of the merits of door to door? The answer

DECISION AND ORDER
*N.S. v. Anchorage School District*, DEED Case No. 06-18     PAGE 27

is that this is not a court. While an appellate court may cut to the chase of a dispositive procedural violation, a hearing officer has no such luxury. The parties and the reviewing court are entitled to have the hearing officer make findings of fact and conclusions of law on all of the issues, including those that a court may find moot in its capacity as an appellate reviewer. The hearing officer must consider and report the facts as presented and decide all of the issues, including those which a court may ultimately find to be moot.

Therefore, the hearing officer finds the district denied the student procedural FAPE through egregious procedural violations that interfered with the guardians' right to participate in the IEP process.

ORDER

In accordance with the forgoing findings of fact and conclusions of law the hearing officer orders as follows:

1. The district shall continue to provide door to door service to the student.

2. The district shall reimburse the guardians and/or the student's trust for the expenses incurred between November 3rd and December 9, 2005 to drive home from Chugiak Elementary and back in order to meet the student upon arrival, and the guardians and/or the student's trust for the expenses incurred between April 10 through May 5, 2006 to drive the student home from Chugiak Elementary School. The guardians shall provide the district with a detailed accounting of such claimed expenses within 10 days of

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18     **PAGE 28**

the date of this order.  If the district objects to the guardians'
claim for expenses, then the district and the guardians shall have
20 days from the date of this order to file and serve simultaneous
briefing on the expense issue.  The parties will then have 10 days
to file their simultaneous reply briefs.  The hearing officer will
endeavor to rule on the expense issue within ten days of the reply
briefs.

<u>RIGHT TO APPEAL</u>

Under AS 14.30.193(f) the guardians and the district have the
right to appeal this decision and order directly to the state or
federal courts.  The guardians and the district have until thirty
days after the date of this decision and order to exercise their
rights to appeal.

DATED this *16* day of August, 2006, at Anchorage, Alaska.

By _____
   Jonathon A. Katcher
   Hearing Officer

<u>Certificate of Service</u>

I hereby certify that on
the *16* day of August, 2006,
I mailed/<u>FAX</u>'d the foregoing to:

Sharon Schumacher                    Bradley D. Owens
Alaska Dept. of Ed.                  Jermain, Dunnagan & Owens
& Early Development                  3000 A Street, Suite 300
810 W. 10th Street, Suite 200        Anchorage, AK 99503
Juneau, AK 99801-1894                FAX 563-7322
FAX 465-2806

Sonja Kerr
Disability Law Center
3330 Arctic Blvd., Suite 103
Anchorage, AK 99503
FAX 565-1000
_____
Jonathon A. Katcher

**DECISION AND ORDER**
*N.S. v. Anchorage School District*, DEED Case No. 06-18    PAGE 29

Law Offices of

# Pope & Katcher

### 421 West First Avenue, Suite 220
### Anchorage, Alaska 99501

Douglas Pope                    Telephone: (907) 272-2021
Jonathon A. Katcher           Telephone: (907) 272-8577
Sandee Alto, Legal Assistant      Facsimile: (907) 274-8040

---

## FAX TRANSMITTAL SHEET

The pages-comprising this facsimile transmission contain confidential information from Pope & Katcher. This information is intended solely for use by the individual entity named as the recipient hereof. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this transmission is prohibited. If you have received this transmission in error, please notify us by telephone immediately so we may arrange to retrieve this transmission at no cost to you.

DATE: August 16, 2006

FROM: Jonathon Katcher

PLEASE DELIVER THIS TRANSMISSION TO:

**Brad Owens**          **563-7322**
**Sonja Kerr**           **565-1000**
**Sharon Schumacher**    **1 907 456-2806**

NUMBER OF PAGES BEING SENT: **30**   **(Including cover sheet)**

**Original to Follow via Mail?**    **Yes**

Client Reference:    **In the Special Education Matter Concerning N.S.**

Our File Number:    **5350**

Comments:      **Decision and Order**

<u>Attorney-Client Confidential Information is included in this transmission.</u> If you have received this facsimile in error, please notify Sandee at (907) 272-8577. Thank you.