IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| A.M., by and through his parents, R.M. and A.M.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>FAIRBANKS NORTH STAR BOROUGH SCHOOL DISTRICT,<br><br>    Defendant. | Case No. 3:05-cv-179 TMB<br><br>O R D E R |

This matter is an administrative appeal under the Individuals with Disabilities Education Act, 20 U.S.C. sec. 1400. ("IDEA"). Docket 1. Plaintiffs, the parents of A.M., are challenging an administrative decision arising under the IDEA. The parties have styled their briefing as cross-motions for summary judgment, and this matter is fully briefed. Docket nos. 17, 18, 20, 29, 30, and 38. The Court heard oral argument on September 1, 2006, and now enters the following order.

**Factual and Procedural Background**

A.M. is a minor child (d.o.b. 9/30/00) with autism and other disabilities who is entitled to the rights and protections of the IDEA. The Act requires that the unique educational needs of a child with a disability be determined on an individual basis, and an individual program of education ("IEP") developed for each child based on those unique needs. 20 U.S.C. § 1400(d)(1)(A). The dispute in this case is regarding pre-school education. After A.M. was identified as a child in need of special education, the following events took place:

**February 2004** - A Fairbanks School District, ("FSD" or "District") speech pathologist completed a brief speech and language test of A.M., which concluded that his receptive and expressive language skills were significantly delayed. A.M.'s parents were not provided a copy of this report at the time, but rather received it over a year later in April 2005. Docket 20 at 9. The

1

original "individual program of education" ("IEP") was developed pursuant to the IDEA, which A.M.'s parents claim was developed without any input from them prior to the meeting they attended. Docket 20 at 10.

**March 11, 2004** - A.M. started school. In 2003-04, the school system offered either a morning or afternoon preschool session to children with disabilities. Each session lasted 2.75 hours, 5 days per week. In 2003-04, Fairbanks School District staff assigned him to the morning session. It is apparently undisputed that the length of the day was not determined at the IEP meeting, but rather was retroactively filled in on the paperwork as 153 minutes per day. Docket 20 at 11.

**Summer 2004** - a program was developed for the summer session. FSD notes that there was no request by the parents for any program other than the one that the IEP developed in February 2004. The parents note that during the entire summer of 2004, A.M. received just 12 days of ½ day preschool. Docket 20 at 12.

**July 2004** - A.M. was diagnosed with autism (moderate), hyperactivity disorder, pica and disruptive behavior disorders. Docket 29 at 9; Docket 20 at 11.

**October 2004** - A.M. returned to school, with the addition of occupational therapy (OT) services. In 2004-05, he was assigned to the afternoon session. A.M.'s parents requested that he be permitted to attend a full day of preschool (both morning and afternoon sessions), but their request was denied. Docket 20 at 13. An informational meeting was held, during which the FSD coordinator for intensive and preschool services advised the parents that a full day intensive program was "not developmentally appropriate" for preschoolers, with or without autism. Docket 29 at 6.

**December 10, 2004** - A formal IEP meeting was held where the parents expressed their desire for an "all inclusive ABA" program.[1] Docket 29 at 6. The Special Education Director for

---

[1] At oral argument, Plaintiffs indicated their complaint is focused on the length of the program offered, not the type of program offered. Although the parents were interested in "ABA" methodology, which was a program offered by an outside provider, Fairbanks School District offered a different program.

2

FSD opined at this meeting that much of what the parents were requesting in terms of an ABA program was actually occurring, but was labeled differently than "ABA" methodology. Docket 29 at 7. "It was acknowledged at this meeting that A.M. had made little progress with the IEP that had been in place since February 2004." Docket 20 at 14.

**January/ February 2005** - The parents retained a private evaluation of the child, which resulted in a report stating that his autism was growing more severe, and that he would benefit from a full day intensive therapeutic program utilizing ABA methodology.[2] Docket 29 at 7; Docket 20 at 14. The same month, the FSD issued a proposed IEP, which the parents rejected. The parents stated that they felt if AM was to make any meaningful progress, he needed a program that provided "1 on1 intensive ABA intervention." Docket 29 at 7. On 2/15/06, the Disability Law Center filed a request for a special education due process hearing, claiming that A.M. had been denied a free appropriate public education (FAPE) as required by the IDEA, and requesting compensatory education, reimbursement, and a new IEP with more appropriate services for A.M., including a full day program.

**April 2005** - the parents withdrew the child from the program in favor of an intensive, exclusive ABA program.

**May 2005** - A.M.'s parents again requested services from the District, and A.M. returned to the district in the Fall of 2005. Docket 20 at 15.

**November 2005** - A.M.'s family moved to Indiana to obtain a program for the child. Docket 20 at 14-15.

Following an administrative hearing, the administrative hearing officer found that the District had provided A.M. with a FAPE in the past, denied any reimbursement of compensatory education, and ordered the parties to develop a new IEP for A.M. to "reflect the District's representations during the hearing." The administrative officer determined that a full-day session was denied because the District only offered half-day sessions to all preschoolers. The hearing

---

[2]This opinion was apparently rendered by a private organization that deals with children with autism and promotes the ABA program.

3

officer further found that the parents rejected the proposed IEP offered by the school district in February 2005 because they were committed to the ABA approach.

Plaintiff's appeal this determination, arguing that A.M. is entitled to a full day session of preschool from October 2004 (when they first requested it) and continuing. They request a reversal of the administrative decision that the District could lawfully refuse full-day programming without any determination of his unique needs or, in the alternative, a remand for a new administrative hearing in front of a new hearing officer. They also seek attorney fees. Docket 17.

## Argument

The Supreme Court has indicated that where there is a claim under the IDEA, the Court must determine first whether the State or District has complied with the procedures set forth in the IDEA. If so, then the court can consider whether the resulting IEP is reasonably calculated to enable the child to receive educational benefits. Hendrick Hudson Dist. Bd. Of Educ. v. Rowley, 458 US 176 (1982).

## Procedural Error and Meaningful Participation by Parents

Plaintiffs suggest that the District has failed to comply with procedural requirements, and thus need not consider whether the resulting IEP is reasonably calculated to enable A.M. to receive educational benefits (the second prong of Rowley). Docket 20 at 7. They argue that the content of the IEP ultimately developed is irrelevant if the parents cannot meaningfully participate in its formation. See ML v Federal Way, 394 F.3d 634, 645 (9th Cir. 2005). Where parents are deprived of evaluation information, the IEP developed during that process cannot be sustained as a matter of law. Docket 38 at 7, citing Amanda J. v. Clark County, 260 F.3d 1106 (9th Cir. 2001).

Plaintiffs argue that they were prevented from meaningfully participating in the IEP process for three reasons: 1) failure to discuss a full day program for their son;[3] 2) failure to provide them

---

[3] See Shapiro v. Paradise Valley Unified School District No. 69, 317 F.3d 1072 (9th Cir. 2003).

4

with the only report about eligibility when determining initial placement;[4] and, 3) failure to provide prior written notice as required by 20 U.S.C. 1415, 30 CFR 300.503. Docket 20 at 19-24.

They argue that it is "an undisputed fact that the parents were not timely provided with the only evaluation completed by the school district to determine A.M.'s initial eligibility and that there was no meaningful discussion at the initial IEP meeting about how long a school day A.M. should have." Docket 20 at 7. They suggest that by putting him in a half-day class without consideration of his needs, he was denied a FAPE as guaranteed by the IDEA. Docket 20 at 8-9.

Plaintiffs further note that the hearing officer acknowledged that the length of A.M.'s school day was determined by the availability of programming, and not in light of his special needs, and argue that her conclusion that this was not a violation of the IDEA was in error. Docket 20 at 16-17. In support, Plaintiffs rely on Adams v. Oregon, 195 F.3d 1141 (9th Cir. 1999)(holding that the number of hours of service for a student with disabilities must be contemplated by the child's IEP team and must be linked to his or her unique needs and developmental goals. The Court rejected a reduction in service hours to a student that was not related to the child's individual needs, but rather was based upon staff availability.) Docket 20 at 18-19. The conclusion that the IEP team did not even consider providing AM both a.m. and p.m. sessions, because the District simply did not offer more than half-day sessions to all of its preschoolers, "is not an individualized approach based upon A.M.'s unique needs." Docket 20 at 18. "A district's service delivery system or administrative convenience simply cannot dictate a child's program or placement. See 34 C.F.R. Part 300, Appendix A." Docket 20 at 20.

The prior written notice requirements require that parents of a child with a disability be informed of any action proposed or refused by the agency, with an explanation. The hearing officer concluded that the District had violated the prior written notice requirements, but that it was of no consequence. Plaintiffs dispute this finding, arguing that the purpose of prior written notice is that the parents are given a reason by the District as to any refusal, and that the reason is based on

---

[4]See Amanda J. v. Clark County, 260 F.3d 1106 (9th Cir. 2001) and Shapiro v. Paradise Valley Unified School District No. 69, 317 F.3d 1072 (9th Cir. 2003).

5

evaluations of the student's individual needs, not upon the services available. Docket 20 at 24. See Honig v. Doe, 484 U.S. 305 (1988). Plaintiffs argue that it is a "fundamental flaw" for the hearing officer to conclude that the District failed to provide prior written notice, and to still uphold their actions. Docket 20 at 25.

In response, FSD argues that procedural error constitutes a denial of FAPE only when it results in the loss of educational opportunity or when it significantly restricts parental participation in the IEP process, and whether or not a procedural violation was harmless error depends on the total circumstances. Docket 29 at 16-17, citing ML v. Federal Way Sch. Dist., 394 F.3d 634, 653 (9th Cir. 2005). FSD's position is that the failure to provide a copy of the initial evaluation and failure to provide prior written notice did not result in either the loss of an educational opportunity for A.M., or deny him FAPE, or seriously infringe the parents' opportunity to participate in the IEP process. Docket 29 at 16.

At oral argument, FSD explained that despite the fact that neither the parents nor the school district had the original evaluation at the first IEP meeting, they in fact developed an IEP that addressed A.M.'s specific issues. The IEP provided the very services that the evaluation called for. Accordingly, it did not affect the program or the parents' opportunity to participate. Furthermore, FSD argued that the parents had multiple opportunities to participate in the formation of the IEP. They were granted meetings in October 2004, December 2004, and February 2005. However, the parents were unavailable for the February meeting, so the results of that meeting were mailed to the parents for their input. At that point, the parents rejected the proposed IEP and withdrew A.M. from services.

**Length of Day and Blanket Policy**

It is apparently undisputed that the length of the day was not determined at the IEP meeting, but rather was retroactively filled in on the paperwork as 153 minutes per day. Docket 20 at 11. The parents suggested at oral argument that this administrative act of filling in the amount of time retroactively is evidence that the school district had a blanket policy that no more than a half day of pre-school is permitted under any circumstances. Plaintiffs argue it is "absolutely the province of

6

the IEP team to decide what the child's services should be," and that therefore a school district's policy regarding the length of school day is not the determining factor under the IDEA. Docket 38 at 3, citing Christopher S. v. Stanislaus County, 348 F.3d 1205 (9th Cir. 2004). They argue that such a policy warrants, as a matter of law, that the child has been denied a FAPE. The parents suggest that the hearing officer did not adequately address the issue of the school district's "blanket policy."

FSD argues that there is no "credible evidence" that AM required a full-day program in order to receive FAPE, and that the parents' belief that their son needed a full day program is not the determining factor in such a decision. Docket 29 at 15. At oral argument, FSD clarified that at no point in the administrative process did any evaluator conclude that A.M. needed more hours of school each day in order to receive FAPE. Rather, A.M. had "intensive needs" requiring more hours of intervention away from school. Counsel for the parents had the opportunity to respond to this argument, and argued that the IEP team did not reach the issue of whether A.M. required a full-day program, but rather "that issue was cut off at the pass." The parents argue that no specific evaluation of A.M. was considered.[5] Rather, the parents were informed that a full-day program was inappropriate for any preschooler - with or without autism. FSD, however, notes that there was testimony at the administrative level which indicated that if a full-day program had been deemed necessary by the IEP team, that it could have been implemented. Docket 29 at 6, citing IOR 14, Tr. 240. FSD's position is that they did not have a "pre-determined program" for A.M., but remained open to training in and use of the ABA method. Docket 29 at 11.

**Deference to Hearing Officer**

The hearing officer concluded that the February 2005 proposed IEP did not deny a FAPE, but rather that the document was a working draft and that by rejecting the proposal and withdrawing their child, the District was precluded from incorporating more of the parents' suggestions in a

---

[5]At oral argument, Plaintiffs took the position that regardless of the number of hours that A.M. might have required to meet his needs, the school district would have been required to meet those requirements in order to provide a FAPE, up to 24 hours per day.

7

revised plan, and the parents were not able to take advantage of "Autism Partnership training" that District staff received in March and April of 2005. Docket 29 at 11. The hearing officer determined that the parents' rejection of the February 2005 IEP was based upon their commitment to a particular academic approach to autism. (The "ABA" approach). She noted that while some jurisdictions are moving toward mandated ABA, most jurisdictions still allow a district to provide the methodology it thinks is best suited to the individual child.

FSD argues that the decision issued by the hearing officer contains thorough and complete findings, to which this court must give deference under the IDEA. Docket 29 at 2. FSD argues that the court is not permitted to "substitute [its] own opinions of sound educational policy for those of the school authorities." Docket 29 at 12, citing Adams v. State of Oregon, 195 F.3d 1141, 1145 (9th Cir. 1999). FSD stresses that the hearing officer carefully reviewed and considered all of the evidence, made credibility determinations when necessary, and thoroughly explained her rationale regarding each issue. At oral argument, FSD stressed that the Court should give deference to the findings of the hearing officer are "careful and thorough."

Plaintiffs stressed that a hearing officer can be "careful and thorough - and wrong." They argue that this Court should perform a *de novo* review. The amount of deference to the hearing officer is at the discretion of the court. Docket 38, citing Gregory K. V. Longview School District, 811 F.2d 1307, 1314 (9th Cir. 1987); Town of Burlington v. Dept. of Ed., 736 F.2d 773 (1st Cir. 1984).

### **Analysis**

It is undisputed that the parents bear the burden of demonstrating at this juncture that the FSD did not comply with the IDEA. See Docket 29 at 13, citing Clyde K. V. Puyallup School District, 35 F.3d 1396, 1399 (9th Cir. 1994), and Schaffer v. Weast, 546 U.S. ___, 163 L.Ed.2d 387, 393 (2005). See also 4AAC 52.550(e)(9). Under Rowley, this Court must first consider whether the State or District has complied with the procedures set forth in the IDEA. If so, then the court can consider whether the resulting IEP is reasonably calculated to enable the child to receive educational benefits. Hendrick Hudson Dist. Bd. Of Educ. v. Rowley, 458 US 176 (1982).

8

Case 3:05-cv-00179-TMB   Document 53   Filed 09/29/06   Page 8 of 11

The Court is not persuaded by Plaintiffs' three arguments that they were prevented from meaningful participation in the formulation of the IEP due to procedural errors, and that the school district has violated the IDEA as a matter of law under the first prong of Rowley. Procedural error constitutes a denial of FAPE only when it results in the loss of educational opportunity or when it significantly restricts parental participation in the IEP process. See ML v. Federal Way Sch. Dist., 394 F.3d 634, 653 (9th Cir. 2005)(concurring opinion), citing W.G. v Board of Trustees of Target Range Sch. Dist. No. 23, 960 F.2d 1479, 1484 (9th cir. 1992). It is clear from the record that the parents were actively involved in the IEP process. Although Plaintiffs complain that there was a failure to discuss a full day program for A.M., it is undisputed in the record that the draft IEP which was proposed to Plaintiffs in February 2005 was indeed that - only a draft. Discussions between the school district and the parents in the formation of the IEP were intended to be ongoing, but came to a halt when the parents withdrew A.M. from the program. This case is distinguishable from Adams v. Oregon, 195 F.3d 1141 (9th Cir. 1999) and Christopher S. v. Stanislaus County, 348 F.3d 1205 (9th Cir. 2004). In Adams, the court held that the reduction in services for staff vacations was not related to the child's unique developmental needs, was inadequate, and that the parents were entitled to reimbursement if their private placement was appropriate and reasonable. In Christopher S., the court held that a blanket policy of shortened school days for disabled students violates the Rehabilitation Act and the ADA, but that a reduction in hours is valid if it is contemplated by the child's IEP. Both of these cases involved a reduction of hours from the original IEP due to circumstances unrelated to the IEP. In this case, A.M. was receiving services commensurate with the services offered to other preschoolers. The parents felt their child needed more hours of services, and the IEP was still in the development phase when the parents withdrew their child from the program.

The Court agrees with the hearing officer that the failure of the school district to forward the early report regarding A.M. was harmless error. Plaintiffs have not shown that if they had been aware of that report, that their approach would have been any different in forming the original IEP, that there was any loss of educational opportunity, or that their participation in the IEP process was

9

significantly restricted. This Court declines to put form over substance by finding that the failure to disclose the evaluation in a timely manner is a fatal error in terms of complying with the procedures of the IDEA. The same is true for the lack of prior written notice. Accordingly, this Court finds that the school district substantially complied with the IDEA procedures, and that any failure to meet the letter of the Act was harmless error on the facts of this case.

Turning to the question of whether the IEP was reasonably calculated to enable A.M. to receive educational benefits, the Court agrees with FSD that the pertinent inquiry is whether the program is appropriate when developed, not in hindsight. Appropriate educational programs under the IDEA do not mean the absolute best or potential maximizing services for the child. Rowley, 458 U.S., at 200. In this case, it is undisputed that A.M. was not progressing under the original IEP, and that the IEP was still being developed when the parents withdrew the child from the school system and sought an intensive ABA program elsewhere.

Finally, although Plaintiffs argue that there is a blanket policy that the FSD does not provide more than 13 hours a week of special education services for any disabled preschooler, there is testimony in the record that had more than 13 hours been deemed necessary for A.M. under his IEP, it could have been provided. Docket 29 at 6, citing IOR 14, Tr. 240. The hearing officer was charged with determining the credibility of the witnesses, and this Court will not second-guess the hearing officer in that regard. Plaintiffs simply have not met their burden of proof in showing that the FSD had a blanket policy in place that violated the IDEA.

## Conclusion

In light of the foregoing, it is hereby ordered that Defendant's Cross-Motion for Summary Judgment, (Docket 30), is **GRANTED**, Plaintiffs' Motion for Summary Judgment, (Docket 17), is **DENIED**, and the Complaint in this matter is **DISMISSED WITH PREJUDICE**. It is so ordered.

Dated at Anchorage, Alaska, this 29th day of September, 2006.

/s/ Timothy Burgess
Timothy M. Burgess
United States District Judge

11